84 873
100 727

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### HODNETT'S ADM'X v. PACE'S ADM'R.

#### MAY 3d, 1888.

#### Absent, Richardson, J.

1. EVIDENCE—*Declarations of former owner—Case at bar.*—In action on bond in name of administrator of obligee for benefit of administrator of assignee against administrator of surety thereon, the beneficial plaintiff offered as evidence of his intestate's title to the bond, the declarations of the obligee, not made in the presence of the obligors, that he had transferred the bond to the beneficial plaintiff's intestate:

HELD:

    The evidence was mere hearsay and inadmissible.

2. IDEM—*Quære.*—Whether or not in a controversy between obligee's administrator and a claimant of such bond as transferree from the obligee in his lifetime, the declarations of the obligee to the effect that he had transferred said bond to such claimant, would be admissible evidence to prove his title thereto, though made in the absence of the obligors.

3. IDEM—*Declarations of obligor.*—In action on bond against surety, evidence of the declarations of the principal obligor not made in the presence of the surety that the bond had not been paid, is hearsay and inadmissible against said surety.

3. IDEM—*Alteration—Burden of explanation.*—Where it appears that on the face of. bond in suit that the date has been so altered that the bar of the statute of limitations was not applicable to the bond, the burden of explaining such alteration rests on the plaintiff. *Priest* v. *Whitacre,* 78 Va., 151.

Error to judgment of corporation court of the city of Danville, rendered April 21st, 1887, in an action of debt on a bond wherein John R. Pace, administrator of G. T. Pace, deceased,

suing for the benefit of James R. McCully, administrator of Charles Lucas, deceased, the defendant in error, was plaintiff, and Narcissa Hodnett, administratrix of M. B. Hodnett, deceased, the plaintiff in error, was the defendant. Opinion states the case.

*Green & Miller* and *Guy & Gilliam*, for the plaintiff in error.

*Peatross & Harris*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

The plaintiff sued out of the clerk's office of the circuit court of Pittsylvania county, on the 9th day of July, 1881, a summons against M. B. Hodnett, surviving obligor of himself and John M. Sutherlin, deceased, in a plea of debt for $241 25, with interest thereon from the 18th day of October, 1853, till paid.

To the declaration the defendant, M. B. Hodnett, demurred; and, thereupon, by consent of the parties, the case was removed from the circuit court of Pittsylvania county to the corporation court of the town of Danville, in which latter court it was duly docketed, and continued from term to term until the death of the defendant, M. B. Hodnett; whereupon it was revived against the appellant, as administratrix of the said M. B. Hodnett, deceased, and was, again continued from term to term until April term, 1887, when the appellant withdrew the demurrer filed by M. B. Hodnett in 1881, and filed three pleas, viz: *non est factum*, payment, and the statute of limitations; on which pleas, issues were joined, a jury empanelled, and a trial had, resulting in a verdict for the plaintiff against the appellant for $241 25, with interest from October 18th, 1853; upon which verdict the court, overruling defendant's motion to set aside the same, entered the judgment complained of against the appellant, as administratrix aforesaid. In the progress of

the trial, appellant excepted to sundry rulings and instructions of the court, and also excepted to the action of the court in overruling her motion for a new trial.

The first error assigned, is, that the court admitted the witness, George C. Cabell, to state to the jury, against the objection of the defendant, conversations alleged to have been had with G. T. Pace, deceased, the payee in the bond sued on, in relation to the said bond, not in the presence of the obligors in said bond, or either of them, or their personal representatives. We are of opinion that this assignment of error is well taken. The statements of this witness of what G. T. Pace, deceased, said to him several years previously, disclaiming any interest in the bond sued on, and that he had transferred it to Charles Lucas, then deceased, was purely hearsay evidence and wholly incompetent. The question of the admissibility of such testimony has been frequently decided adversely to the parties offering it. (*Paige* v. *Cagwin,* 7 Hill, N. Y.; *Alexander* v. *Mahon,* 11 Johns.; *Kent* v. *Walton,* 7 Wend.; *Hurd* v. *West,* 7 Cowan; *Whitacre* v. *Brown,* 8 Wend.; *Beach* v. *Wise,* 1 Hill.) In his notes on the case of *Paige* v. *Cagwin,* as reported in 42 American decisions, at page 80, Freeman says : " Declarations by a former owner of a chattel or chose in action, made after parting with his interest are, of course, inadmissible. *Christie* v. *Bishop,* 1 Barbour, ch. 115; *Peck* v. *Crouse,* 46 Barb., 156 ; *Smith* v. *Exchange Fire Insurance Co.,* 40 N. Y. Sup. Ct. (8 Jones and S.), 500. And as declarations of a former owner are inadmissible against the title of a subsequent purchaser for value, so are they inadmissible to prove that title. *Worrall* v. *Parmelee,* 1 N. Y., 521." In the case of *Worrall* v. *Parmelee,* 1 N. Y., 521, the court below admitted the delaration of a former owner to prove property in the defendant, and on this error alone was reversed, the court saying, by Jewett, C. J.: " The decision of the justice upon the objection taken to the admissibility of the evidence of Brown's declaration, was clearly erroneous. Such evidence is nothing more than hearsay." The

record in this case shows that the bond sued on was not assigned in writing to Lucas; and there is no evidence of property therein or title thereto in Lucas or his administrator, except the incompetent testimony of the witness George C. Cabell, offered seven years after the death of G. T. Pace, the payee in the bond, that said Pace had told him that he had no interest in the bond, but had transferred it to Charles Lucas, then deceased. Charles Lucas died sometime before July 12th, 1866, as is shown by the order of the court appointing appraisers of his estate, one of whom was G. T. Pace, to whom the bond sued on was given; and which said appraisers returned an inventory and appraisement of said Charles Lucas' estate, signed by themselves and by his administrator, in which inventory and appraisement no mention is made of the bond sued on. Its first appearance, according to the testimony of George C. Cabell, was when it was brought to him by Lucas' administrator, or by some member of his family, he does not know which, nor exactly when, but he believes in 1868; and after remaining sometime in his hands, it was placed by him in 1871, in the hands of Commissioner Moseley, among the papers of the suit of *Sutherlin* v. *Lucas' Administrator*, where it remained for some years, and until 1881, when this suit was brought on it at the insistence of Elisha Barksdale, Jr., attorney for one Soyars, who sought to have a settlement of the accounts of J. R. McCally, administrator of Lucas, in the suit of *Sutherlin* v. *Lucas' Administrator*. G. T. Pace, the payee in the bond, refused steadily as long as he lived to permit suit to be brought upon the bond in his name, and after his death, his administrator allowed the suit to be brought in his name, upon being indemnified against costs, &c. The suit was not brought until long after the death of John M. Sutherlin and G. T. Pace, the principals, as debtor and creditor in the bond; and even then it was permitted to sleep on the docket without a trial, or effort for a trial for nearly six years, and until the death of the surety in the bond, M. B. Hodnett, had taken

away the last party and living witness to the transaction, thirty-four years after the bond fell due.

And the court upon the trial admitted the testimony of the said witness, George C. Cabell, as to the admissions of John M. Sutherlin, the principal obligor in the bond, as evidence against the defendant administratrix of M. B. Hodnett, deceased, surety in the said bond; it being admitted that the alleged admissions of J. M. Sutherlin were made, if at all, in the absence of M. B. Hodnett, the surety. This was error. *Lewis* v. *Woodworth,* 2 N. Y., 528; *Shoemaker* v. *Benedict,* 11 N. Y., 179. Upon the trial it was shown that the date of the bond has been changed or altered from 1852 to 1853. The face of the bond shows the alteration, and the uncontradicted testimony of the expert witness, W. E. Boisseau, is that it had been plainly changed from 1852 to 1853. If of the original date, 1852, the statute of limitations barred the action thereon. For this alteration of the date of the bond, palpable upon its face and expressly proved withal, the plaintiff offered no explanation whatever, nor introduced one word of evidence in relation thereto. But the instructions given by the court to the jury were erroneous; and a new trial should have been awarded because of the misdirection of the jury. In the three instructions given by the court, at the request of the plaintiff, the jury were told that in the case before them, in which the defendant, upon her plea of *non est factum,* relied upon a palpable and undenied alteration of the instrument sued on—a change in its date—so as to bring it within the period of limitation, it was the defendant's duty to satisfy them by evidence that the said alteration was made without her consent or that of her intestate, and *was not made* at the time of the execution of the bond, and that, unless this was done, it was a presumption of law, by which the jury was bound; that the alteration was contemporaneous with the execution of the bond, and was made with the defendant's consent, and rendered her liable to judgment. The third and last instruction given by the court

is in these words: "The court instructs the jury that if they believe from the evidence the bond in question has been altered; that, in the absence of other evidence, the presumption of law is that the alteration was made at the time the bond was executed; and, further, that every alteration on the face of a written instrument detracts from its credit and renders it suspicious, and this suspicion the party claiming under it must explain to the jury by satisfactory evidence." This instruction, if not, as it is, grossly self-contradictory and erroneous, is wholly ambiguous, and calculated both to misdirect and confuse the jury. The true and well-established rule of fundamental law and justice is directly to the contrary. In his note to the case of *Woodworth* v. *Bank of America,* 19 Johns., 391, reported 10 American Decisions, on page 378, Freeman says: "There is a presumption of fact that an alteration was made after execution; but it will be generally a question for the jury to determine whether the alteration was made before or after the execution." Greenleaf, on Evidence, vol. I., section 564, says: "If on the production of the instrument it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. Every alteration on the face of a written instrument detracts from its credit and renders it suspicious, and this suspicion the party claiming under it is bound to remove." "But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom, and the intent with which, the alteration was made, as matters of fact to be ultimately found by the jury *upon the proofs to be adduced by the party offering the instrument in evidence.*" *Priest* v. *Whitacre, Sheriff,* 78 Va., 151. And in the case of *Elgin* v. *Hall,* 82 Va., 680, Lacy, J., speaking for this court, says: "We have no occasion to go into any speculation, however, as to the cause or agent of these changes made in the interest of the defendant who offers in evidence these papers to prove the payment of money by him. The

rule of law is that *he* must explain these things (which he has not attempted to do), or he must lose all benefit, taking nothing on account of them."

No evidence is offered in explanation of the alteration upon the face of the bond sued on thirty-four years after it became due, without which alteration it would be barred by the statute; no proper evidence is offered of Lucas' title to or interest in the bond; no explanation of the failure of Lucas to sue in his life-time upon this bond, (if, in truth, he had any right or title in or to the bond) although the proof is, that he was, for years previous to his death, pressed for money, and lived all his life in the immediate vicinity of Hodnett, the surety, and of John M. Sutherlin, the principal obligor on the bond, one of whom was rich, and the other well to do, and prompt to pay his debts; and with Hodnett's estate after his death under administration. Both upon the facts and the law of this case the judgment of the corporation court of Danville complained of is wholly erroneous, and the same must be reversed and annulled; and the cause will be remanded to the said corporation court for further proceedings in accordance with this opinion.

JUDGMENT REVERSED.