Mullin, J.
The great question in this case was whether the waters of West creek were raised by means of the dam which supplies the defendants’ mill, to- a greater height since 1853, when it was repaired by the defendant, than for the twenty years preceding that time? If they were so raised, then more of the plaintiff’s land was flowed, and *350 he was entitled to recover in the action. There was a conflict of evidence in regard to almost every material fact testified to by the plaintiff’s witnesses. A verdict in such a case must be held by this court to be conclusive on the questions thus litigated.
The judge who tried the cause, and the general' term that reviewed the proceedings on the trial, had the power to grant a new trial upon the facts. This court has no such authority. Fór all the purposes of this appeal, the questions of fact passed upon by the jury are not • open to discussion or review. We must assume, therefore, that the waters of the West creek were not raised by means of the dam any higher since 1853, than they had been for the twenty years next preceding that date. It only remains to inquire whether any error was committed by the learned judge who tried the cause, in his ruling and on the trial, or in his charge to the jury, to the prejudice of the rights of the plaintiff.
On the trial, Peter Hynds was examined as a witness on the part of the plaintiff, and testified, amongst other things, that he had measured the-flush boards on the dam in 1852 or 1853 and made a memorandum of the width, on a piece of paper, and had a correct copy of it then in court. He first made the memorandum on paper—then marked it on the shop or wash-house, and made the copy then in his possession from-the marks made on the shop or wash-house. The plaintiff’s counsel then told the witness to look at the paper and state the width of the flush boards. This was objected to by the defendants’ counsel, and the objection was sustained, and the plaintiff’s counsel excepted. Before the witness was called on to state the contents of that memorandum, he had testified to the width of the flush boards, from the memorandum, without objection. There was, therefore, no necessity or propriety in requiring him to repeat the statement, even if there was no question as to its competency. But it was incompetent for him to *351 read the memorandum, for several reasons: 1st. It was not the original entry, and could not therefore be used as evidence of the fact—and it was' not intimated by the witness that he did not remember the fact without reference to the memorandum. 2d. The fact of malting the memorandum was wholly immaterial, unless it could be used for one.or the other of the purposes above specified.
It is competent to read an entry, made by a witness, of any fact material to the issue, if made at or near the time when the fact occurred, and he can swear that it was made correctly (Guy v Mead, 22 N. Y. 462); or he may use an entry made by himself or by any other person, or a copy of an entry, if, on reading it, he can testify that he then recollects the fact to which the entry relates. (1 Cowen & Hill’s Notes, 756 to 759.) The entry to which the attention of the witness was called on the trial, was not an original entry—hence, not evidence of its own contents—nor was it used, or offered to be used, to refresh the witness’s recollectian. The question was properly overruled.
Several questions were put to the witnesses, calling for their opinion as to the amount of damages sustained by the plaintiff, which questions were objected to, and the objections sustained by the court. These rulings are now insisted upon as erroneous, and relied upon to reverse the judgment.
If the verdict was rendered on the ground that the water was not raised by the dam, the question of damages was wholly immaterial. The jury never reached that question, and hence the ruling in regard to the damages was utterly unimportant. But the plaintiff’s counsel insists that the verdict may have been rendered because there was no evidence of damages in the case, and hence the exclusion of that evidence was prejudicial to him. The suggestion is not borne out by the facts. If the plaintiff’s witnesses were believed, there was abundant evidence to authorize a verdict of over $100. But if there had been *352 no proof of special damage, the plaintiff would (his witnesses being believed) have been entitled to at least nominal damages. And had a verdict been found in favor of the plaintiff for any sum, it would then have been necessary to examine the rulings on the trial in relation to the damages, in order to ascertain whether material and competent evidence had not been rejected to the plaintiff's prejudice. But in view of the finding of the jury on the principal point in the case, an examination of these questions is wholly unnecessary.
We now come to the charge. The plaintiff's counsel does not complain of the instructions given to the jury' upon the principal questions in the cause, bqt it is the refusal to charge as requested that constitutes the main ground of complaint.
The first request was to charge that if the defendant had for the twenty years preceding 1853, used flush boards only during low water, they could not raise the dam to the height of the flush boards, so as to keep the water up to the height of such boards during the whole year.
The plaintiff was entitled to the benefit of this instruction. " The learned judge had instructed the jury that the defendants had the right to repair the dam in such manner and with such materials as. they pleased, provided the water was not raised higher than it had been during the preceding twenty years. But if, during a part of the year only, flush boards -were used, and ifl repairing the dam it was raised permanently to such a height that during the entire year the water was raised to the height of the flush boards in addition to its height when those boards were not used, such increased height was not authorized by the prescription, and was injurious to the plaintiff.
If the right acquired was to use flush boards a few months of the year only, their use, or the use of any equivalent for them, was not justified by the prescription, and parties injured were entitled to damages. The principle *353 referred to is thus illustrated in Cowel v. Thayer (5 Metcalf, 257). When, according to the custom of the country, a mill has been kept up in the winter only, and the mill owner has uniformly been, accustomed to draw off the water sufficiently early in the spring to allow the growth of a crop of grass, and to continue it down until the hay is cut and got in, it must be regarded as establishing a right to a winter privilege only, and not a constant privilege, and then flowing the land through the year must be considered, a new. use, and not within the mill owner’s prescriptive right. (See also Angel on Water-courses, § 224.)
Although the learned judge refused to chargeas requested, he did charge “that the plaintiff’s right to maintain the action depended on the facts whether his land and premises had been overflowed at any season of the year by the defendant’s increasing the height of the water in constructing or repairing the mill dam beyond the usual and ordinary height of the water for twenty years previously to such construction or repair.” This was more favorable to the plaintiff than the instructions would have been if given as requested. The jury were told, in substancé, that if at any time in the year the water was raised by means of the dam as repaired to a greater height than the ordinary and usual height during the twenty years preceding the repairs, the plaintiff was entitled to recover. If under this charge the jury had fouqd that the water had been raided during the summer months higher than had been usual, whether caused by'the increased height of the dam, or by making it tighter, the plaintiff was entitled to recover. To such a charge the defendant might, with some show of propriety, except, but not the plaintiff. The judge, instead of distracting the attention of the jury by multiplying exceptions and qualifications to the general principles which he had previously laid down for their guidance, gave them a. plain, clear, concise rule by which to be guided in determining the question of liability; and that was, whether at any time of the *354 year the water had been raised by means of the dam when repaired to a greater height than had been usual during the preceding twenty years. This rule could work no injury to the plaintiff, whatever its effect might be on the rights of the defendant.
The plaintiff’s counsel requested the court to charge, that the defendants acquired no right by the use of temporary flush boards.to retain the water during periods of the year when there was low water, to substitute for any portion of such flush boards a permanent superstructure. The court refused so to instruct the jury, and the plaintiff’s counsel excepted.
. I know of no reason why an owner of a dam may not raise the water of a stream by the use of permanent additions to his dam to the same height it was raised by temporary ones.. Those whose rights are affected cannot complain, unless the water is raised higher by the permanent structure than by the temporary one. The plaintiff’s counsel probably intended to call on the court to charge, that -the right acquired by the defendants to raise the wa$er during a part of the year by temporary erections on the dam, did not justify the defendants in permanently raising the dam to the sanie height, and thus raise the water higher during the entire year. Thus stated, the proposition is substantially a repetition of the preceding one; and the court was right in refusing to repeat it. ,
I think the case was properly disposed of at the circuit, and that the judgment should be affirmed. .
Denio, Ch. J.
This action was brought to recover damages for overflowing the plaintiff’s land by means of a mill-dam of the defendant, across the West creek, in Schoharie county. The defendant justified under a prescription evidenced by an alleged adverse user for more than twenty years. The verdict was for the defendant. The questions presented on - this appeal arise upon certain exceptions to *355 rulings, upon objections to evidence, andto refusals to charge in the manner requested by the defendant. The original plaintiff was examined as a witness on his own behalf, and testified to the width of certain flush boards which the defendant, in 1852 or 1853, had fixed upon the top of the dam. He said these boards were from sixteen to nineteen inches wide, and he stated that he had, at some time, measured them with a square and put down the measurement on paper with a pencil, and at some other time marked the width on a shop or wash-house; and that, at a former trial of the cause, he had taken off these marks on to paper, which paper, it appeared, he had with him. His counsel asked him to look at the paper and state the width of the flush boards. This was objected to, and excluded by the judge, and the plaintiff’s counsel excepted. I understand the question to require the witness- to testify what statement of measurement was put down on the paper. In other words, it was an offer to read the memorandum as evidence. That, I think, was not competent. To entitle such a memorandum to be read, it müst be the original, made at the time to which the transaction relates. (Halsey v. Sinsebaugh, 15 N. Y. 485.) Here it had been twice transferred, either accurately or inaccurately. There is no pretense that it was evidence _per se. It was not, moreover, a question of allowing the witness to refresh his memory by the inspection of his copy of the memorandum. It was claimed by the plaintiff that the cellar of a dwelling-house owned' by him had been injured, or its use impaired, by the alleged raising of the dam. The plaintiff’s counsel offered to ask the plaintiff, while under examination as a witness, what the value of the use ' of the house was, per annum, before the raising of the dam. I think this was objectionable, as calling for the opinion of the witness. It is very true that evidence of the value of an article of property, where such value is in issue, is admissible. But here the value of the rent of the house was not important, *356 except arguiáentatively. We may suppose, the question was to have been followed up by inquiring the value of the rent after raising the dam, and then taking the difference for the amount of the damages. It will not be pretended that a witness could be allowed to state his opinion of the amount of damages. He could describe the character of the overflowing, and its effect, and then it would be for the jury to estimate the damages. If the house had been kept for renting, and something in the nature of a market price of the use could have been proved, it might have been competent. What was actually offered was two opinions upon two different matters, forming together an opinion as to the amount of damages.- But there is another objection which bears equally upon both these exceptions. The jury have found that the plaintiff was not entitled to recover' anything, which is, equivalent to finding that the defendant was not guilty of the injury complained of. After such a finding, the case ought not to be sent back for a new trial on account -of an incorrect ruling upon the question of damages. The result has. demonstrated that such an inquiry was quite immaterial. Another question, as to damages, was excluded. It was an attempt to prove the amount of injury, in the opinion of the witness of whom the inquiry was made; . The onjy peculiarity of the inquiry was that the damage per year was what was asked to be stated. This was plainly incompetent.
The remaining exceptions were taken to refusals to charge as requested. There was a conceded valid prescription to keep up the dam to a certain height. The plaintiff's grievance was that the defendant had, within twenty years, made a permanent addition to the height, in the place of flush boards, which had been used for twenty years, but which would .occasionally be. carried off by floods. The evidence related to the character of that elevation at different times, and also to the relative height of the waters before and after the permanent addition was *357 made. The judge charged, in effect, that if the jury believed from the evidence that the defendant, at the time the permanent addition was put on, or at any other time, had increased the height of the dam in a manner to raise the water and flow it back upon the land of the plaintiff to a greater height than it had been for twenty years preceding that time, the defendants were liable, but if the usual and ordinary height of the water had not been exceeded, the defendants were not liable. The plaintiff requested the jury to be charged that the defendant had no right-to use the flush boards in any other manner than they had been used for twenty years prior to the commencement of the suit. This instruction the judge refused to give, but instructed the jury that it depended upon the effects produced by the two methods of adding to the dam, and not to the mode in which it was done; that the plaintiff could not- complain of the mode of raising the dam, provided the effect had not been to increase the height of water, and thereby overflow some parts of the plaintiff’s land not before overflowed. There was an exception to the refusal and to the charge as given. A similar instruction was again asked for and refused, and the refusal excepted to. But it raises no different point from that just stated. I think that the rule laid down by the judge was the true one, and that the instructions asked for were properly withheld.. (Cowell v. Thayer, 5 Metc. 258.)
The judgment shoqld be affirmed.
All the judges concurring, judgment affirmed.